IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

|  |  |  |
|---|---|---|
| TIM TAYLOR, on behalf of himself and others similarly situated; and BRYCE BAKER on behalf of himself and others similarly situated; | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:23-cv-03031 |
| JBS FOODS USA; TYSON FOODS, INC. CARGILL MEAT SOLUTIONS CORP.; and NATIONAL BEEF PACKING COMPANY, LLC, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**_AMENDED_ CLASS ACTION ANTI-TRUST COMPLAINT**

1

# EXHIBIT 1

COMES NOW, Plaintiffs Tim Taylor and Bryce Baker, by and through undersigned counsel, on behalf of themselves and all others similarly situated, alleges, with personal knowledge as to their own actions, and upon information and belief as to those of others, the following against Defendants (collectively, "Packers" or "Defendants"):

## NATURE OF THE ACTION

1.      This is a proposed class-action complaint brought on behalf of one class and one subclass (further defined *infra),* comprising ranchers and farmers who domestically sell cattle for beef that is born, raised, and slaughtered in the United States that are placed in unfair competition with the ground beef and muscles cuts of beef from imported lived cattle and beef sold by Defendants (the "Products," as further defined below) that are deceptively labeled and marketed.

2.      Country of Origin Labeling ("COOL") is a mandatory U.S. labeling scheme enforced by the U.S. Department of Agriculture ("USDA") that requires retailers notify their customers with information regarding the source of certain foods, defined as "covered commodities." The Farm Security and Rural Investment Act of 2002 (2002 Farm Bill), the 2002 Supplemental Appropriations Act (2002 Appropriations), and the Food, Conservation and Energy Act of 2008 (2008 Farm Bill) amended the Agricultural Marketing Act of 1946 (Act), 7 U.S.C. Chapter 38, to require retailers to notify their customers of the country of origin of covered commodities, which include muscle cuts of beef and ground beef. COOL, is a consumer labeling and marketing law regulated by the USDA's Agricultural Marketing Service ("AMS"), not a food safety program under the Food Safety and Inspection Service ("FSIS"). COOL prohibits labeling covered commodities as a "Product of the U.S.," and requires labeling on covered commodities that reflect its originating country. 7 U.S.C. § 1638a(a)(1), (2).

3.      On December 18, 2015, the Congress removed "beef" and "pork" from the relevant

2

provisions of § 1638a via the Consolidated Appropriations Act of 2016, Pub. L. 114-113, § 759, 129 Stat. 2242, 2284-85 (amending 7 U.S.C. §§ 1638, 1638a). In 2016, AMS issued a final rule in 2016 amending its regulations to remove COOL requirements for beef and pork. Since that time, the USDA has been silent on COOL regulations.

4.      Since the 2016 Act, Defendants have been labeling and selling beef that is imported into the U.S. post-slaughter as "Product of the U.S." or some similar label designed to give the impression that the beef that the consumer is purchasing is from an animal born, raised and slaughtered in the United States (the "Products"). (*See* Defendants' declarations attached this complaint as Exhibits 1 to 4.) To further enable the Products' mislabeling and to facilitate its sale, Defendants deliberately adulterate and commingle this foreign beef with domestically raised beef when they sell it to retailers. This adulteration, commingling, and mislabeling leads retailers to pass the Products along on consumers as a "Product of the U.S."

5.      Notwithstanding the changes to the Agricultural Marketing Act and AMS's COOL regime, beef consumers are still protected from misleading labeling. The Federal Meat Inspection Act of 1906, Pub. L. 59-382, 34 Stat. 669 (1906) still protects beef consumers from mislabeling notwithstanding the 2015 beef exclusions to COOL. The Meat Inspection Act prohibits "causing [beef] to be adulterated or misbranded." 21 U.S.C. § 610(d) (2023). It also prohibits "false or misleading" labeling on beef sold in the United States:

> (d) Sales under false or misleading name, other marking or labeling or in containers of misleading form or size; trade names, and other marking, labeling, and containers approved by Secretary
>
> No article subject to this subchapter shall be sold or offered for sale by any person, firm, or corporation, in commerce, under any name or other **marking or labeling which is** false or misleading, or in any container of a misleading form or size, but established trade names and other marking and labeling and containers which are not false or misleading and which are approved by the Secretary are permitted.

3

21 U.S.C. § 607 (2023).

6.      Finally, the Meat Inspection Act makes clear that state law is concurrent with federal law with respect to branding and labeling of beef:

> Marking, labeling, packaging, or ingredient requirements in addition to, or different than, those made under this chapter may not be imposed by any State or Territory or the District of Columbia with respect to articles prepared at any establishment under inspection in accordance with the requirements under subchapter I of this chapter, **but any State or Territory or the District of Columbia may,** *consistent with the requirements under this chapter,* **exercise concurrent jurisdiction with the Secretary over [beef] for the purpose of preventing the distribution for human food purposes of any such articles which are adulterated or misbranded** . . .

21 U.S.C. § 678 (emphasis added). States may not add labeling requirements beyond what federal law requires, but they are free to impose their own remedies for violations of federal law and do not have to tolerate "false or misleading" labeling.

7.      Collectively, Defendants have a significant share of the beef market in the United States. The USDA tracks both imported cattle and beef: the agency counts 592 pounds of beef as a "live cattle equivalent." Hence, 1 billion pounds of imported beef is the rough equivalent of 1.7 million live cattle. As of 2019, Defendants collectively control about 6.9 million cattle or cattle equivalent sold in the U.S. market. Only the state of Texas controls a larger share of the market (about 12.6 million cattle). Neither Kansas nor Nebraska (the second and third top cattle inventory states) even rival Defendants in domestic cattle inventory.

8.      Defendants' Products are composed of imported beef (approximately 3.06 billion pounds on average since 2014, or roughly 5.2 million cattle equivalents) as well as imported live cattle (approximately 1.94 million head on average since 2014), commingled with domestically born and raised cattle (actual "Product of the U.S.") Since 2015, imports of beef to the United States are estimated to average $6.2 billion annually.

9.      Defendants have breached consumer trust by representing that the Products are a "Product of the U.S." when, in fact, those products are not derived from domestic cattle. Defendants' misrepresentations that their Products are a "Product of the U.S." prompt consumers to buy the Products when they would not otherwise, and pay more for them than they otherwise would. *See* Exhibit 5[1],  By mislabeling and commingling foreign and domestic beef, Defendants also effectively deny consumers a meaningful choice over the origin of their beef by denying them the right to have the Products accurately labeled.

10.     Since 2015, the $800 billion a year American meat industry of which Defendants comprise 85% of the beef sector, have breached consumer trust and engaged in an unconscionable trade practice  by representing that some of their beef products are a "product of the U.S." when in fact, the products are not derived from domestically originating cattle misleading the consumer and unfairly harming the American producers.[2]

11.     Since 2015, the average price to the consumer for beef products has dropped by 10% while the average price paid to American producers of beef for their cattle has dropped by an average of 40%.

12.     Defendants' misrepresentations about beef that is a "product of the U.S." prompts consumers to buy beef products with more confidence than they might otherwise have, and to pay more for them than they otherwise would and allows Defendants to pay Plaintiffs, the members of the Class and the members of the sub-class significantly less for their cattle that actually originate in the United States.

13.     Plaintiffs Taylor and Baker, like most domestic producers ranch in an environmentally

---

[1]https://www.fsis.usda.gov/sites/default/files/media_file/documents/Analyzing_Consumers_Value_of_PUSA_Labeling_Claims_final_report.pdf
[2] *See* https://www.forbes.com/sites/nicolerasul/2018/08/29/why-your-product-of-u-s-a-steak-may-not-actually-be-from-a-cow-raised-on-american-soil/#1628bdcabdd2

responsible manner with concern for food safety standards and humane animal handling standards and expects that consumers will rely on upon those actions in making a decision on purchasing beef. Reasonable consumers who see Defendants' representations about beef that is a "Product of the U.S.," did not expect the Products to be derived from non-domestic cattle. Reasonable consumers purchased the Products believing that they were supporting American producers, like Plaintiffs, by purchasing Products labeled "Product of the U.S."

14.     By deceiving consumers about the true origin of the products, Defendants are able to sell a greater volume of the products, to produce cheaper products in other Countries, and to take away market share from competitors as well as pay lower prices to domestic producers, like Plaintiffs, thereby increasing their own sales and profits.

15.     During the Covid-19 pandemic these predatory anti-competitive practices by Defendants have increased such that "[a]t livestock auctions farmers and ranchers were paid less than $1.11 a pound for finished cattle. At the same time, packers increased the price of boxed beef sold to grocery stores approximately 20 percent compared to the beginning of March." https://www.tsln.com/news/ending-price-gouging-sen-rounds-says-is-matter-of-national-food-security/.

16.     Moreover, this anti-competitive predatory action by the Defendants is exacerbated by Covid-19 as Defendants are increasing imports of beef that is then label "Product of the US" or some other deceptive representation while shutting down plants in America, further increasing their profit margins and driving the American rancher and farmer out of business all at the same time, obscenely profiteering from the crisis.[3]

---

[3] *See* https://nypost.com/2020/04/18/billionaire-brothers-meat-plants-riddled-with-coronavirus/amp/?__twitter_impression=true&amp=1

6

17.    Because Defendants' labeling and advertising of the imported beef products that they indiscriminately co-mingle with domestically raised beef are false and misleading to reasonable consumers in order to engage in unfair competition that harms American beef producers, Plaintiffs brings this case on behalf of themselves and the members of the class and subclass seeking injunctive and monetary relief, as set forth more fully below.

**PARTIES**

18.    Plaintiff Tim "Tip" Taylor is a cow/calf producer in Lyman County, SD.  Tip grew up on a ranch and after college and construction jobs, he returned to Lyman County to pursue his own operation. He has ranched for over 30 years.. During the class period (as further defined below), Plaintiff Taylor has produced beef cattle for sale into the commercial beef market.

19.    Plaintiff Bryce Baker is a resident of Stanley County, South Dakota, and a long-time producer of beef cattle with multigenerational family connections to ranching in South Dakota. During the class period (as further defined below), Plaintiff Baker has produced beef cattle for sale into the commercial beef market.

20.    While producing beef cattle born, raised and slaughtered in the United States, Plaintiffs actively engaged in conservation efforts to produce beef in an environmentally sound and socially conscious manner. Plaintiffs undertook these efforts, as do other American producers, so that the American consumer could rely on their reputations as domestic producers when purchasing beef upon representations that they were products of the United States or similar statements. Consumers understood the representations about the origination of the beef products as they were labeled when sold to retailers, *see* Exhibits 1-4, to mean that the they were purchasing beef from cattle born, raised and slaughtered in the United States on operations such

7

as Plaintiffs'.

21.     Defendant JBS USA Food Company, is a Delaware corporation with its principal place of business in Greeley, Colorado

22.     Defendant Tyson Foods, Inc. is a Delaware corporation with its principal place of business in Springdale, Arkansas.

23.     Defendant Cargill Meat Solutions Corporation, is a Delaware corporation with its principal place of business in Wichita, Kansas.

24.     Defendant National Beef Packing Company, LLC, is a Delaware corporation with its principal place of business in Kansas City, Missouri.

25.     Defendants manufacture and/or cause the manufacture of the Products, and market, distribute, and sell the products that are not exclusively produced in this Country throughout the United States, including in South Dakota through their scheme to market these products as products that are exclusively produced in this Country.

**SUBSTANTIVE ALLEGATIONS**

26.     In recent years, consumers have grown more concerned about health, sustainability, and animal welfare, leading them to consider how their food is produced. This increased consideration of food production has made consumers more reliant on domestically raised cattle in order to have confidence that the beef they are purchasing meets those concerns, thus a product that is labeled "Product of the U.S." generates a confidence in the consumer that the beef that they are about to purchase is from an American rancher or farmer, like Plaintiffs, to that fulfills their socially conscious and environmentally responsible concerns including concerns that the beef they are about to consume isn't contributing to serious environmental degradation such

8

as what is being experienced in the deforestation of Brazil.

27.     Consumers now actively seek products that provide assurances regarding animal welfare, food safety standards, environmentally sound production methods and support for the domestic producers. Consumers (as Defendants know) are willing to pay more for products marketed in this way than they are willing to pay for competing products that do not provide these assurances. Moreover, when presented the choice between buying American beef or foreign beef, consumers overwhelmingly prefer American beef.

28.     Defendants manufacture and market a variety of products from the muscle cuts of beef (the "Products") that are derived both from cattle born and raised in the United States and from imported beef either live or slaughtered elsewhere.

29.     Defendants represent to the retailers who convey the information to consumers, that the Products (all of them, not just Products from cattle born and raised in the USA) are "Products of the USA" even though some the Products they are selling to consumers were derived from cattle that never drew a breath of American air, much less were born here. The "Product of the U.S." packaging or similar labeling omitting where the Product actually originated from leads consumers to believe, that the beef they are purchasing was born and raised on an American ranch or farm.

29.30.  Importantly, USDA in recognition of the harms to consumers and beef producers caused by this fraudulent labeling as evidenced in the study found at Exhibit 5, has now adopted a final rule that goes into effect January of 2026 that prohibits this labeling practicing of affixing "Product of the USA" to imported beef (both as chilled or frozen or as live cattle imported for slaughter.) *See* Exhibit 6.

I.     **The Reality of the Imported Beef or Live Cattle for the Products Renders the Defendants' Statements of Production False and**

9

**Deceptive.**

~~30.~~31.  In contrast to what Defendants have told consumers via the retailers that sell their products, *see* Exhibits 1-4, the Products are made from a mixture of domestically born and raised cattle (actual "Product of the U.S.") and imported beef (approximately 3.06 billion pounds on average since 2014) as well as imported live cattle (approximately 1.94 million head on average since 2014). Unbeknownst to consumers who believe they are supporting exclusively American ranchers and farms raised according to that ethos they understand to be associated to the beef industry in this Country, Defendants are misleading them to use their patronage to support unknown, unqualified beef production practices, such as feedlot shipping across the oceans in an environmentally damaging fashion or such as the environmental devastation of deforestation of the Amazon Rain Forest for grazing witnessed in Brazil.

~~31.~~32.  The packaging presents the Products as "Products of the U.~~S.~~SA" or other similar representations, *see* Exhibits 1-4, which results in the representations that are necessarily seen by retail purchasers of the Products. Thus, representations made by Defendants regarding country of origin made to the distributors or to retailers that repackage the meat, such as grocers Costco or Sam's Club, results in  misleading and false representations being made to the consumer.


















14















~~32.~~33. The packaging, with its "Product of United States" or "USDA Choice" with no accurate representation of country of origin, prominently directs purchasers to assume that the Products are actually derived from domestically born and raised cattle when in fact that may not be true at all.

~~33.~~34. In the case of "grass-fed beef" over 75% of the beef sold to consumers largely (80%) by

17

Defendants is from foreign cattle not beef that originates exclusively in the United States.

34.35. Contrary to the representations made by Defendants and passed on to retailers who make the representations to the consumers, much of the beef in the Products is not actually a product of the United States.

**II.    Defendants' Have Deceived Consumers and Are Aware That Their Representations Are False.**

35.36. America's ranchers and farmers, like Plaintiffs, have spent decades cultivating a reputation as an environmentally and socially conscious beef industry. Since 2015, when USDA went silent on COOL for beef and pork, Defendants have wrongfully benefited from that reputation, and from the consumer trust it engenders, and then misused that consumer trust to pay domestic producers 40% less on average per year since 2015 for their born and raised American beef that is sold alongside foreign beef to the consumer under the same labeling.

36.37. Reasonable consumers rely on manufacturers, their reputation, and the information provided in manufacturers' marketing in making purchase decisions, especially in purchasing food.

37.38. Reasonable consumers lack the information and scientific knowledge necessary to ascertain the true source, quality, and nature of the beef products they purchase.

38.39. Reasonable consumers must, and do, rely on Defendants to report honestly where the products originate.

39.40. Reasonable consumers are misled and deceived by Defendants labeling as to where the Products originate from and what that means for how the Product was produced.

40.41. Defendants made these false, misleading, and deceptive representations, and omitted the true information that would counter them, knowing that consumers would rely upon the

18

representations and omissions in purchasing the Products.

41.42.  In making the false, misleading, and deceptive representations and omissions at issue, Defendants knew and intended for consumers to purchase the Products believing them to be products of the United States when consumers might otherwise purchase a competing product, from Plaintiffs or others that are similarly situated, that was actually born, raised and slaughtered in the United States.

42.43.  In making the false, misleading, and deceptive representations and omissions at issue, Defendants also knew and intended that consumers would purchase foreign beef believing that they were purchasing something that represented a humane, environmentally sound and/or socially responsible, production furthering Defendants' private interest of increasing their profits through the sale of what would otherwise be cheaper valued products to the consumer and decreasing the sales of products that are truthfully marketed by its competitors and thereby allowing them to American producers like Plaintiffs less for their cattle directly contrary to the express intent of Congress stating that "[u]nwholesome, adulterated, or **misbranded meat** or meat food products impair the effective regulation of meat and meat food products in interstate or foreign commerce, are injurious to the public welfare, **destroy markets for wholesome, not adulterated, and properly labeled and packaged meat and meat food products, and <u>result in sundry losses to livestock producers</u> and processors of meat and meat food products, as well as injury to consumers.** The unwholesome, adulterated, mislabeled, or **deceptively packaged articles can be sold at lower prices and compete unfairly** with the wholesome, not adulterated, and **properly labeled and packaged articles**, to the detriment of consumers and the public generally. 21 U.S.C.A. § 602 (*emphasis added*)

19

43.44. Upon information and belief, Defendants have profited enormously to the detriment of consumers and domestic producers from its falsely marketed products. It is understood that on average per year since 2015 that imports for Defendants represents close to $6.2 Billion annually.

44.45. Defendants' conduct in representing the Products as being products of the United States deceived and/or is likely to deceive the public.

45.46. To this day, Defendants continues to conceal and suppress the true origination of the Products.

46.47. Defendants' concealment tolls the applicable statute of limitations.

47.48. Upon information and belief, Defendants have colluded and engaged in collective effort to persuade USDA FSIS to issue and continue to hold out a guidance document that allows the Defendants to voluntarily and actively deceive the consuming public as to the source of the beef they are consuming with some sort of a stamp of government blessing, thus causing future harm to domestic beef cattle producers, as well as real, immediate, and continuing harm.

48.49. Plaintiffs and other members of the Class and Subclass will continue to suffer injury if Defendants' deceptive conduct is not enjoined. Plaintiffs would like to continue raising cattle for beef for sale to the consumers. But as a result of Defendants wrongful acts, Plaintiffs and other producers have been unfairly disadvantaged by the actions of Defendants in a way that threatens the viability of their businesses that are already understood to have tight margins or profitability. Absent an injunctive order, Plaintiffs and other American beef producers are prevented from competing fairly in the market, and are otherwise at continued risk of real and immediate threat of repeated injury, including an artificially suppressed price for their cattle.

49.50.  Defendants have violated federal law to deceive the retail grocers of these Products and benefited substantially from their intentional fraud that violates 21 U.S.C. § 610(d) (2023). In so doing they have engaged in a fraudulent enterprise for the purpose of effectuating the scheme, upon information and belief, violating that law, through the use of wire transfers to receive payments for the fraudulently labeled products from the distributors and retailers.

50.51.  Defendant has failed to provide adequate relief to members of the Class and subclass as of the date of filing this Complaint.

**JURISDICTION AND VENUE**

51.52.  This Court has subject matter jurisdiction under the Restraint of Trade Statutes specifically SDCL § 37-1-14.3.

52.53.  This Court has personal jurisdiction over the parties in this case. Defendants conduct business in South Dakota and avails itself of the laws of this State to market, promote, distribute, and sell the Defendants' Products to consumers throughout South Dakota and thru 3rd parties who purchase cattle for this beef from Plaintiff and other similarly situated producers.

53.54.  Venue is proper in this Circuit in Hughes County under SDCL § 37-1-14.1 and because substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products that enabled Defendants to compete unfairly, occurred within this District; and Plaintiffs, as residents, domiciled in South Dakota, bring this action under the laws of South Dakota.

**CLASS ALLEGATIONS**

54.55.  Plaintiffs bring this action as a class action pursuant to SDCL § 15-6-23. Plaintiffs seek to represent the following Class and Sub-Class:

(1)     All ranchers and farmers in the United States who produced cattle for commercial sale for feeder cattle for beef that were born, raised and slaughtered in the United States. ("Class").

(2)     All ranchers and farmers in South Dakota who produced cattle for commercial sale for feeder cattle for beef that were born, raised and slaughtered in the United States ("South Dakota Sub-Class").

55. 56. Excluded from the Class and South Dakota Sub-Class are (1) Defendants, any entity or division in which any Defendants' have a controlling interest, and Defendants' legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

56. 57. The requirements of Federal Rule of Civil Procedure 23 are satisfied:

A.   Numerosity: The members of the Class and the South Dakota Sub-Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is currently unknown to Plaintiffs, based on the known number of ranchers and farmers commercially operating to sell cattle for beef in the United States and South Dakota, Plaintiffs estimate that each numbers greater than 45, if not more.

B.   Commonality: There are questions of law and fact that are common to the Class members and that predominate over individual questions, and therefore, the requirements of Rule 23(b)(3) are met. The common questions of law and fact include the following:

i.   Whether Defendants combined or conspired to restrain trade by engaging in a common scheme to materially misrepresented, either through express or implied representations, that the muscle cut of beef in the Products including ground beef originated exclusively from the United States;

22

ii.   Whether Defendants misrepresented and/or failed to disclose material

facts concerning the Products as part of the restraint of trade;

iii.   Whether Defendants' labeling, marketing, and sale of the Products as

products of the United States constitutes unfair, deceptive,

fraudulent, or unlawful conduct undertaken as an effort pay less to

cattle producers resulting in sundry losses to those domestic

producers;

iv.   Whether Defendants procured and has retained ill-gotten gains from

members of the Class;

v.   Whether Defendants' conduct injured domestic beef producers and, if

so, the extent of the injury;

vi.   Whether Defendants' conduct to intentionally give a false designation

of origin is actionable under ~~violate~~ 15 U.S.C. § 1125(a)(1)(A);~~21~~

~~U.S.C. § 610(d) (2023) effectuated through the use of wire~~

~~transfers for the substantial profit they received constitutes~~

~~racketeering activity actionable under 18 U.S.C.A. § 1964 (c).~~

vii.   Whether Plaintiffs and the Class or South Dakota Sub-Class members

are entitled to injunctive relief; and

viii.   The appropriate remedies for Defendants' conduct.

C.   <u>Typicality:</u> Plaintiffs' claims are typical of the claims of the Class and South

Dakota Sub-Class because Plaintiffs suffered the same injury-i.e., Plaintiffs were

economically harmed by being unfairly able to compete in the market as a result of

Defendants' misleading representations and omissions about the origination of those cattle for the Products or Defendants' racketeering activity.

D. <u>Adequacy:</u> Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class and the South Dakota Sub-Class. Plaintiffs do not have any interests that are adverse to those of the Class members or South Dakota Sub-Class members. Plaintiffs has retained competent counsel experienced in class action litigation and intends to prosecute this action vigorously.

E. <u>Superiority:</u> A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Since the damages suffered by individual Class members are relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged.

~~57.~~58. The prerequisites for maintaining a class action for injunctive or equitable relief under SDCL § 15-6-23 are met because Defendants have acted or refused to act on grounds generally applicable to the Class and to the South Dakota Sub-Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

<b><u>CAUSES OF ACTION</u></b>

<b><u>FIRST CAUSE OF ACTION</u></b>
<b>Violation of the South Dakota Restraint of Trade Statutes</b>
<b>(On Behalf of Plaintiffs and the South Dakota Subclass)</b>

~~58.~~59. Plaintiffs repeat the allegations in all the foregoing paragraphs as if fully set forth herein.

59 60. Plaintiffs bring this claim on their own behaves and on behalf of the South Dakota Subclass.

60 61. SDCL § 37-1-3.1 declares that "[a] contract, combination, or conspiracy between two or more persons in restraint of trade or commerce any part of which is within this state."

61 62. Defendants have acted unfairly and deceptively in a scheme to fraudulently label their Beef Products, so that they may compete in a predatory and anti-competitive manner in violation of the SDCL § 37-1-3.1, by misrepresenting to consumers that the muscle cuts of beef in the Products originates exclusively from American ranchers and farmers like Plaintiffs and other similarly situated producers in order to capitalize on the reputation of those domestic producers and cause underpayment for their cattle to Plaintiffs and the class members. This representation was likely to mislead consumers acting reasonably under the circumstances and did mislead consumers acting reasonably under the circumstances.

62 63. Having made these representations, Defendants have acted unfairly and deceptively, in violation of SDCL § 37-24-6, by omitting information about the actual origination of the beef in the Products a great amount of which originates from imports of beef and imported foreign cattle which allows the Defendants to monopolize the market. This omission was likely to mislead consumers acting reasonably under the circumstances, and did mislead consumers acting reasonably under the circumstances, so that Defendants could unfairly pay Plaintiff and the Class and sub-Class members less for their domestically originated cattle for beef.

63 64. Defendants' representations and omissions were material to consumers. Defendants' representations and omissions led consumers to believe that the Products were derived from American ranches and farms with a reputation of humane standards, food safety protections, and

being environmentally responsible. Defendants' representations and omissions led consumers to purchase imported Products, to purchase more of those Products, and/or to pay a higher price for the Products than they otherwise would have, while at the same time paying domestic producers like Plaintiffs 40% less on average per year for their cattle.

64.65. Although it is not necessary for Plaintiffs to prove that Defendants intended to act unfairly or deceptively, on information and belief, Defendants did so intend, and did knowingly combine or collude to capitalize on the reputation of domestic beef producers to make material representations and omissions to consumers in South Dakota and across the nation which allowed them to compete in a predatory and unfair manner in the market.

65.66. Defendants acted with malice, ill will, or wanton conduct in deceiving American consumers about how their purchasing dollars are being spent, and whether they are supporting domestic producers, or unwittingly spending in support of foreign beef operations associated with environmental degradation. Defendants acted with malice, ill will, or wanton conduct in deceiving American consumers who wish to support environmentally responsible socially conscious South Dakota and USA-based businesses like that of Plaintiffs and other domestic producers.

66.67. Pursuant to SDCL § 37-1-14.3, a person who sustains injury or damages as a result of practices prohibited by SDCL § 37-1-3.1 may sue for equitable relief and to recover damages for underpayment. Plaintiffs sustained injury and damages by receiving less for their cattle than they would have in fair competition that disclosed the actual origin of the beef the consumers bought.

67.68. Plaintiffs bring this claim for violation of SDCL § 37-1-3.1 on their own behaves, and on behalf of other South Dakota ranchers who were paid less for their cattle as a result of Products

labeled as products of the United States being sold to consumers that were not genuinely products of the United States. Plaintiffs are "person[s]" pursuant to SDCL § 37-1-3.1 that has been harmed by the unfair competition created by the unconscionable trade practices of Defendants.

68. 69. Plaintiffs and members of the South Dakota Subclass are entitled to:

        a.   injunctive or equitable relief;

        b.   actual damages

        c.   threefold the damages sustained; and

        d.   attorneys' fees and cost.

SDCL § 37-1-14.3.

## SECOND CAUSE OF ACTION
### Unjust Enrichment
### (On Behalf of Plaintiffs and the Class)

69. 70. Plaintiffs repeat the allegations in all the foregoing paragraphs as if fully set forth herein.

70. 71. Plaintiffs bring this claim on their own behaves and on behalf of the Class.

71. 72. As the intended, direct, and proximate result of Defendants' conduct, Defendants have been unjustly enriched through sales imported Products at the expense of Plaintiffs and the Class members.

72. 73. Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from acting unfairly in competition with Plaintiffs and the Class members by misleading consumers so that they could increase profits while diminishing the amounts paid to Plaintiffs and the Class members for their cattle produced for beef.

27

**THIRD CAUSE OF ACTION**
**Violation of ~~the RICO~~Lanham Act (15 U.S.C. § 1125(a)(1)(A))**
**(On Behalf of Plaintiffs and the Class)**

~~73.~~74.  Plaintiffs repeat the allegations in all the foregoing paragraphs as if fully set forth herein.

~~74.~~75.  Plaintiffs bring this claim on their own behaves and on behalf of the Class.

76.    ~~18~~The Lanham Act, 15 U.S.C. § 1125(a), provides in pertinent part:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
...
shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

~~75.    U.S.C.A. § 1962  declares that "It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."~~

~~76.~~77.  Defendants have ~~acted unfairly and deceptively in a scheme effectuated through the use of wire transfers to receive payments for their fraudulently~~admittedly (*see* Exhibits 1-4) ~~-~~labeled their Beef Products, ~~such that they have engaged in racketeering activity for substantial profits as defined by 18 U.S.C.A. § 1961,~~ by misrepresenting to consumers that the muscle cuts of beef in the Products originates exclusively from American ranchers and farmers  intentionally

28

misrepresenting there geographic origin in violation of ~~21 U.S.C. § 610(d) (2023)~~the Lanham Act.

~~77.    Defendants intended to act deceptively, on information and belief, and did knowingly engage in a scheme to capitalize on the reputation of domestic beef producers to make material representations and omissions to consumers in South Dakota and across the nation which allowed them to compete in a predatory and unfair manner in the market.~~

78.    Pursuant to 15 U.S.C. § 1125(a)~~18 U.S.C.A. § 1964~~, a person who sustains injury or damages as a result of practices prohibited by 15 U.S.C. § 1125(a) ~~18 U.S.C.A. § 1962~~ may sue ~~for equitable relief and~~ to recover damages. Plaintiffs and class members in the zone of interest applicable to this misrepresentation ~~sustained injury and damages by receiving less for their cattle than they would have in fair competition that disclosed the actual origin of the beef the consumers bought.

79.    Plaintiffs brings this claim for violation of 15 U.S.C. § 1125(a)~~18 U.S.C.A. § 1962~~ on their own behalf, and on behalf of other ranchers who were paid less for their cattle as a result of racketeering activity of the Defendants.

80.    Plaintiffs and members of the Class are entitled to:

   ~~e.~~a. injunctive or equitable relief;

   ~~f.~~b. actual damages; and

   ~~g.    threefold the damages sustained; and~~

   ~~h.~~c. attorneys' fees and cost.

15 U.S.C. §§ 1116, 1117~~18 U.S.C.A. § 1964~~.

## <u>JURY DEMAND</u>

Plaintiffs hereby respectfully demand a jury of twelve (12) persons for all matters triable

29

by a jury pursuant to SDCL § 15-6-38(b).

**PRAYER FOR RELIEF**

Plaintiffs, on their own behaves and on behalf of the Class and the South Dakota Subclass, prays for the following relief:

A.    An order certifying the Class and South Dakota Subclass under SDCL § 15-6-23 and naming Plaintiffs as Class and South Dakota Subclass Representatives and their attorneys as Class Counsel;

B.    A declaration that Defendants are financially responsible for notifying Class and South Dakota Subclass members of the pendency of this suit;

C.    An order declaring that Defendants' conduct violates SDCL § 37-1-3.1;

D.    An order declaring that Defendants' conduct violates 15 U.S.C. § 1125(a)18 U.S.C.A. § 1962;

E.    An order providing appropriate equitable relief in the form of an injunction against Defendants' unlawful and deceptive acts and practices;

F.    An order providing appropriate equitable relief in the form of an injunction against Defendants' unlawful and deceptive acts and practices, and requiring that Defendants remove and refrain from making representations on the Products' packaging that beef that is not born, raised and slaughtered in the US is exclusively a product of the US;

G.    Threefold actual damages for members of the South Dakota sub-class pursuant to SDCL § 37-1-14.3;

H.    Threefold actual damages for members of the Class pursuant to 18 U.S.C.A. § 1964;

I.H.    Actual damages for members of the class and sub-class;

30

I.I.    Restitution for members of the Class to recover Defendants' ill-gotten benefits;

J.    An order finding in favor of Plaintiffs, the Class and South Dakota Subclass on all counts asserted herein;

K.    Prejudgment interest on all amounts awarded;

L.    An order of restitution and all other forms of equitable monetary relief;

M.    Injunctive relief as the Court may deem appropriate; and

N.    An order awarding Plaintiffs, the Class and South Dakota Subclass their attorneys' fees and expenses and costs of suit.

                   Respectfully submitted,

                   WESTERN AGRICULTURE, RESOURCE
                   AND BUSINESS ADVOCATES, LLP

                   */s/ A. Blair Dunn*
                   A. Blair Dunn, Esq. (SD Bar No. 4292)
                   Jared R. Vander Dussen, Esq.(*Pro Hace Vice Pending*)
                   400 Gold Ave SW, Suite 1000
                   Albuquerque, NM 87102
                   (505) 750-3060
                   abdunn@ablairdunn-esq.com

                   LAW OFFICE OF MARSHALL J. RAY

                   Marshall J. Ray, Esq. (*Pro Hace Vice Pending*)
                   514 Marble St. NW
                   Albuquerque, NM 87102
                   (505) 312-7598
                   mray@mralaw.com

                   PRESTON LAW OFFICES

                   Ethan Preston, Esq. (*Pro Hace Vice Pending*)
                   4054 McKinney Avenue, Suite 310
                   Dallas, Texas 75204
                   (972) 564-8340 (telephone)
                   (866) 509-1197 (facsimile)
                   ep@eplaw.us

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I filed the foregoing via CM/ECF on this _____ day of February 2025, causing all parties to receive notice via electronic means.

*/s/ A. Blair Dunn*_____
A. Blair Dunn, Esq.